[Crim. No. 7512.   Second Dist., Div. Three.   Apr. 26, 1961.]

THE PEOPLE, Respondent, v. CLAUDE J. HORTON, Appellant.

Claude J. Horton, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

FORD, J.—This appeal is from a judgment[1] of conviction of violation, on two separate occasions, of section 288 of the Penal Code.[2]

The information filed in the superior court contained four counts. The offenses charged in the first and second counts were alleged to have been committed on or about July 25, 1959. While the date was inserted in count two at the end of the trial, no objection was made on behalf of the appellant. In count one the crime of rape in violation of section 261, subdivision 1,[3] of the Penal Code was alleged, while in the second count the charge was a violation of section 288 of the Penal Code. The offenses alleged in the third and fourth counts were stated to have been committed on or about Feb-

[1]In his notice of appeal, the appellant states that he appeals from the judgment and sentence. However, the judgment in a criminal action is the sentence, "sentence" being another term for "judgment" under such circumstances. (*People* v. *Carlson*, 177 Cal.App.2d 201, 207 [2 Cal. Rptr. 117]; *People* v. *Perkins*, 147 Cal.App.2d 793, 797-798 [305 P.2d 932]; *People* v. *Tokich*, 128 Cal.App.2d 515, 519 [275 P.2d 816].)

[2]Section 288 of the Penal Code is as follows: "Any person who shall wilfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in part one of this code upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the State prison for a term of from one year to life."

[3]Section 261 of the Penal Code is as follows with respect to the provisions thereof pertinent on this appeal: "Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either of the following circumstances: 1. Where the female is under the age of eighteen years; . . ."

ruary 27, 1960. In the third count, the crime of rape was charged without reference to any particular section or subsection of the Penal Code, but in both the first and the third counts the person with whom the act of sexual intercourse was alleged to have been accomplished was alleged to be "a female person under the age of eighteen years, to wit, of the age of 12 years." The fourth count embodied an accusation of a violation of section 288 of the Penal Code. It was alleged that the appellant had suffered five felony convictions for which he had served terms in prison.

Upon the trial, the appellant was found guilty as to counts two and four, but not guilty with respect to the charges of rape embodied in counts one and three. It was found that the appellant had suffered the prior convictions as alleged.

At both the preliminary examination and the trial, the appellant was represented by a deputy public defender. On this appeal, he requested that counsel be appointed to represent him. Such request was twice made, one request being attached to his opening brief and the other to his closing brief. We made an independent and thorough investigation of the record, as augmented on our own motion as hereinafter noted, for the purpose of determining whether it would be of advantage to the appellant or helpful to the appellate court to have counsel appointed. (See *People* v. *Hyde,* 51 Cal.2d 152, 154 [331 P.2d 42].) As a result thereof we formed the judgment that such appointment would be of no value to either the appellant or the court and, accordingly, denied the requests.

A summary of the evidence before the trial court will be stated. The child as to whom the offenses were alleged to have been committed was the stepdaughter of the appellant. We will make reference to her as "P." She testified that she was 12 years old, having been born December 6, 1947. Toward the last of February, 1960, the appellant got into her bed. Her sister, the appellant's daughter, was also in the bed. The appellant placed himself on top of P. and "put his private" between her legs. He tried to have intercourse with her but did not do so. Both P. and her sister kicked the appellant. P. further testified that toward the end of July in the previous year, 1959, the appellant got in bed with her. She was familiar with the word "penis"; he did not place his penis inside of her but put it between her legs and engaged in movement. She did not "quite remember" whether at any time on that occasion his penis was placed in her. There had been similar actions by her stepfather "quite a few" times. She

told her mother about "these things happening." On cross-examination, P. admitted that she had been in trouble because of posing in the nude for pictures with a man other than the appellant. When she told her mother about the actions of the appellant, it was in 1960, "one or two times."

The deputy district attorney and the deputy public defender agreed that "if anything happened it happened July '59, and February, '60."

P.'s sister, who was the appellant's daughter, was 8 years old. She was asked about "one night about a month after Christmas" when she was sleeping with P. She testified that her father got on top of P. in the bed. After her father left the bed, he put his shorts on and went out of the room. Upon inquiry as to whether she remembered her father coming into the room where she and her sister were sleeping "about last summer," she answered that she did but she did not remember what happened. Her father got into bed with her and her sister more than once and each time he would get on top of her sister. The witness said that she, the witness, did not kick her father every time but that she did more than once. On cross-examination, she said that she told her mother at one time of the appellant's actions but her mother did not believe her.

On behalf of the appellant, his wife was called as a witness. She testified that during the Christmas vacation the younger daughter told her something about her father trying to get in bed with her and P. P., who was present, denied that the father had done so. P. never mentioned or complained about such matter to her mother. The witness never heard any confusion or noise arising out of her husband's presence in the bedroom with the children.

The appellant's stepson, who was 15 years of age, testified in his behalf. Most of the time the boy was home but sometimes he would stay at another boy's home. He did not remember whether he was home most of the time during July 1959. He never heard any commotion arising out of any attempt of his sisters to kick the appellant out of bed "or anything like that." He heard no screaming or "hollering" from either one of the girls in February 1960, or in July 1959.

The appellant, as a witness on his own behalf, denied that the acts had occurred to which P. and his daughter had testified. In July 1959, he was home until about the 27th, when he went to the hospital for an operation. On the day of his arrest, he had scolded P. for having been at a neighbor's house

until 10 :30 p. m. the night before. He told her that he would punish her when she returned from school. P. slammed the front door and went to school. Later that morning his wife received a call from the police department.

The appellant contends that, since at the time of the preliminary examination the committing magistrate found that there was sufficient evidence to require him to stand trial on two counts of statutory rape but not on the two counts relating to violation of section 288 of the Penal Code, the superior court was without jurisdiction to try him on either of the two counts of the information under which a violation of section 288 of the Penal Code was charged. In order that such contention could be fully examined, on this court's own motion the record was augmented by the inclusion of the transcript of the preliminary examination. (Rule 12 of Rules on Appeal.) It appears therefrom that P. related two principal incidents. From her testimony, it is a reasonable inference that one of such incidents occurred the last part of February or the first part of March 1960, although she did testify that on February 27, 1960, he touched her "private." The other of such incidents, she said, occurred about a week or two before the appellant went to the hospital for an operation in July 1959. The inference to be drawn from her testimony at the preliminary examination is that on each of the two principal occasions sexual intercourse was accomplished.

In the light of the evidence at the preliminary examination, the district attorney was warranted in including in the information a count charging rape and a count charging a violation of section 288 of the Penal Code with respect to each of such principal incidents. Under section 739 of the Penal Code the district attorney is authorized to charge by information the commission of any offense disclosed by the evidence taken at the preliminary examination even though such offense is not specified in the order of commitment, provided the offense charged is related to the transaction which was the basis for the commitment order. (*People* v. *Warren,* 163 Cal.App.2d 136, 141 [328 P.2d 858]; *People* v. *Thomas,* 163 Cal.App.2d 360, 362 [329 P.2d 332]; *People* v. *Dean,* 158 Cal.App.2d 572, 575-576 [322 P.2d 929].) In *People* v. *Greer,* 30 Cal.2d 589, the Supreme Court said at page 603 [184 P.2d 512] : "Section 288 now specifically includes acts constituting other crimes [provided for in part one of the Penal Code] and permits a greater penalty for those acts, if they are committed with the specified intent, upon a child under 14 years of age. The

intent could normally be inferred from the very nature of the acts now under consideration. . . . Now statutory rape committed upon the body of a child under 14 years of age can be punished as a lewd and lascivious act." And on page 604 of the Greer case, it is further stated: "The prosecution may charge both crimes in the same information. The jury must be instructed, however, that, as in the case of necessarily included offenses, there can be only one verdict of guilty." (See also *People* v. *Costa,* 141 Cal.App.2d 795, 797 [297 P.2d 667].) It is clear from the record herein that as to each count as to which the appellant was convicted, the same transaction which was the basis for the commitment order provided the elements of the crime of which the appellant was found guilty. With respect to the appellant's contention, the statement of the court in *People* v. *Dean, supra,* 158 Cal.App.2d 572, at page 575, is pertinent: "Defendant asserts that the committing magistrate found the evidence presented at the preliminary examination insufficient to justify holding him for robbery. . . . As stated in *Parks* v. *Superior Court, supra,* 38 Cal.2d 609, 613-614 [241 P.2d 521], 'the district attorney might include a related offense although the magistrate concluded impliedly or otherwise that the evidence did not show probable cause that such offense had been committed.' " ▮ The insertion of the date of the offense in count two of the information at the end of the trial cannot be the basis of a claim of prejudicial error because no objection thereto was made and the record fails to disclose any prejudice suffered by the appellant. (*Cf.* *People* v. *Wren,* 140 Cal.App.2d 368, 369 [295 P.2d 54].) In view of what has been said hereinabove, it is not necessary to discuss the effect of the failure of the appellant to move to set aside the information pursuant to section 995 of the Penal Code. (See *People* v. *Poe,* 174 Cal.App.2d 593, 596 [344 P.2d 870]; *People* v. *Warren, supra,* 163 Cal.App.2d 136, 140.)

▮ The appellant attacks the credibility of his stepdaughter. While some reference has been made to the preliminary transcript in the consideration of the appellant's contention as to the invalidity of certain counts of the information, that transcript was not a part of the record in the trial court.

▮ On a review of the sufficiency of the evidence to sustain the judgment of conviction, an appellate court is not permitted to go outside that record. (*People* v. *McKinney,* 152 Cal.App.2d 332, 335 [313 P.2d 163]; *People* v. *Justice,* 167 Cal.App.2d 616, 622 [334 P.2d 1031].) ▮ But even

if we were to consider the inconsistencies between P.'s testimony at the preliminary examination and her testimony at the trial as to whether on each of the two principal occasions the appellant accomplished an act of intercourse, we could not interfere with the determination of the trial court that her testimony at the trial was worthy of belief since such determination finds substantial support in the record. ▓ As said in *People* v. *Cox,* 104 Cal.App.2d 218, at page 219 [231 P.2d 91] : ''It is elementary that the credibility of the witness and the reconciliation of any discrepancies in the evidence are questions to be determined by the trier of the facts and its determination will not be disturbed on appeal where there is substantial evidence to support it.'' (See also *People* v. *Koontz,* 171 Cal.App.2d 633, 634 [341 P.2d 815].) ▓ In *People* v. *Huston,* 21 Cal.2d 690, the Supreme Court stated at page 693 [134 P.2d 758] : ''Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] ▓ To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] ▓ Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'' (See also *People* v. *Spigno,* 156 Cal.App.2d 279, 284-285 [319 P.2d 458].) ▓ While corroboration of the testimony of P. was not required under the law (*People* v. *Jaquish,* 170 Cal.App.2d 376, 378 [338 P.2d 974]), some support of her testimony is found in that of her half sister. The evidence was clearly sufficient to sustain the determination of the trial court as to the appellant's guilt.

Insofar as the appellant seeks to urge error because his counsel failed to make a more extended attack upon the credibility of his stepdaughter, such a claim under the record here presented can not aid the appellant in his attack upon the judgment. He received competent legal representation at his trial. (See *People* v. *Wein,* 50 Cal.2d 383, 410-411 [326 P.2d 457].) ▓ Likewise without merit is the appellant's claim that the trial court improperly permitted counsel for

the People to use leading questions. The incident arose when P. was asked, "Now, a few nights later were you awakened from your sleep?" It is evident from her negative answer, after her statement that she thought she "got the nights mixed up," that she was not led. But, in any event, the use of leading questions on the direct examination of a witness may be permitted by the court in the exercise of a sound discretion. (*People* v. *Johns*, 173 Cal.App.2d 38, 46 [343 P.2d 92]; *People* v. *Polak*, 165 Cal.App.2d 226, 232 [331 P.2d 662]; *People* v. *Mora*, 139 Cal.App.2d 266, 272 [293 P.2d 522]; *People* v. *Arrangoiz*, 24 Cal.App.2d 116, 118 [74 P.2d 789].) No abuse of discretion here appears.

The appellant asserts in his closing brief that the court found him not to be a sexual psychopath "by its very sentencing him under a Penal Code." The appellant apparently misunderstands the nature of the proceedings under which he was detained at the Atascadero State Hospital.[4] ▪ As this court recently said in *People* v. *De La Roi*, 185 Cal.App. 2d 469, at page 472 [8 Cal.Rptr. 260] : " 'The sexual psychopathy law provides for separate proceedings of a civil nature for the purpose of protecting society against the activities of sexual psychopaths and at the same time affording a means whereby a person found guilty of a criminal offense may be aided by medical treatment.' (*Thurmond* v. *Superior Court*, 49 Cal.2d 17, 20 [314 P.2d 6].) ▪ When such proceedings have run their course and have come to an end under the statutory provisions, the criminal proceedings are to be resumed. (*Russell* v. *Superior Court*, 172 Cal.App.2d 60, 62-63 [342 P.2d 389] ; see *People* v. *Sylvia*, *supra*, 54 Cal.2d 115, 118 [4 Cal.Rptr. 509, 351 P.2d 781].) ▪ As stated in *People* v. *Wells*, 112 Cal.App.2d 672, at page 675 [246 P.2d 1023] : 'When the sexual psychopath comes back to superior court it becomes the duty of the judge to go on with the case. It is within the discretion of the court to send the defendant to state's prison, even though the medical experts certify that he has recovered to such an extent as to no longer be a menace to the safety of others. Such discretion is to be exercised in view of the entire history of the case, and

---

[4]The minutes of the trial court of September 21, 1960, are in part as follows: "A report by the Superintendent and Medical Director of the State Hospital at Atascadero is filed, wherein he states that in his opinion, the defendant is a Sexual Psychopath, but will not benefit by care or treatment in a State Hospital, and that he is a menace to the health and safety of others."

is properly committed to the conscience of the trial judge.' No error has been shown.''

In his closing brief, the appellant raises a question relating to prior convictions of felonies as alleged in the information. So that this matter could be fully considered, on this court's own motion the record on appeal was augmented by the inclusion therein of an exhibit which was received in evidence and which consists of certified copies of records from the Arkansas State Penitentiary and the Oklahoma State Reformatory. (See Pen. Code, § 969b.) On direct examination by his own counsel at the trial, the appellant was questioned concerning various convictions in connection with the allegations in the information. On cross-examination, he testified that he had suffered four convictions. It is clear from the examination of the exhibit in the light of such testimony that the judgment in this case erroneously includes a finding of a particular conviction which has no support in the evidence and must be stricken. The date with respect to another conviction appears to be erroneously stated in the judgment.

The judgment in this case is modified by striking therefrom the following portion thereof: ''Burglary and Grand Larceny, a felony, Circuit Court of the State of Arkansas, Jefferson County, December 11, 1945, and served a term in the State Prison.'' The judgment is further modified by inserting in the body thereof, with respect to a remaining finding of a conviction of burglary and grand larceny, the date ''December 11, 1941'' in lieu of the date ''November 12, 1941.'' The judgment, as so modified, is affirmed.

Shinn, P. J., and Vallée, J., concurred.