573 P.2d 142

**Ernest RUFENER and Griselda Rufener, Applicants-Appellants,**

**v.**

**Russell C. SHAUD, Magistrate, Fifth Judicial District, State of Idaho, Respondent.**

Nos. 12262, 12263.

Supreme Court of Idaho.

Dec. 2, 1977.

Rehearing Denied Jan. 30, 1978.

---

824

James J. May of May, May, Sudweeks & Fuller, Twin Falls, for applicants-appellants.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for respondent.

DUNLAP, District Judge (Ret.)

Defendants-appellants Ernest and Griselda Rufener were charged by criminal complaint with first degree murder, kidnapping, and embezzlement. Preliminary hearing was held and magistrate Granata bound the defendants over on involuntary manslaughter and false imprisonment rather than first degree murder or kidnapping. The prosecuting attorney filed an appropriate information against each defendant in district court, but later each information was dismissed by the district court on motion of the prosecuting attorney. The prosecuting attorney then refiled complaints alleging first degree murder and kidnapping. Respondent, Magistrate Russell C. Shaud, was assigned to the case on second filing. Defendants moved to dismiss the complaint, or in the alternative, to require the original magistrate to hear the case again; respondent denied the motion. Defendants then sought alternative writs of prohibition and/or mandate from the district court to require Judge Shaud to either dismiss the cases or re-assign them to the original magistrate. The district court denied the motions and defendants appeal. This case comes before this court as two appeals, which were consolidated by the Court.

■ Defendants assign error to the procedure of dismissing and refiling a charge once a defendant has been through preliminary hearing and probable cause has been found lacking on that charge.

This question was raised and disposed of in the recent case of *Stockwell v. State*, 98

Idaho 797, 573 P.2d 116 (1977), which held in substance that such a refiling is not prohibited unless done without good cause or in bad faith. The record in this case reflects neither and therefore we believe defendants' claim in this respect to be without merit.

■ Defendants also assign error to the refusal of the district judge to order the preliminary hearing on the refiled charges to be held before Judge Granata. They cite as authority the Oklahoma cases of *Chase v. State*, Okl.Cr.App., 517 P.2d 1142 and *Jones v. State*, Okl.Cr.App., 481 P.2d 169. These cases do not persuade us that Idaho should adopt the rule that the same judge who heard the first preliminary hearing must hear the one on the refiled charge if he is still available. In this state judges are assigned through the administrative procedures of the Court and not selected by the parties.

The state contends that writs of mandate and prohibition are not available in this situation. We agree with the latter position and affirm.

■ Writs of mandate and prohibition are provided for by statute.[1] Each may be issued only when there is no plain, speedy and adequate remedy in the ordinary course of the law, I.C. §§ 7–303, and 7–402,[2] or when the court has no jurisdiction or exceeds its jurisdiction.

This court has held that

"A right of appeal is regarded as a plain, speedy and adequate remedy at law in the absence of a showing of exceptional circumstances or of the inadequacy of an appeal to protect existing rights." *Smith v. Young*, 71 Idaho 31, 33, 225 P.2d 466, 468 (1950).

See also, *Coeur d'Alene Turf Club Inc. v. Cogswell*, 93 Idaho 324, 461 P.2d 107 (1969); *Felton v. Prather*, 95 Idaho 280, 506 P.2d 1353 (1973). Nothing in this case precludes defendants from their normal right to appeal. Defendants contend that appeal is inadequate to prevent them from being subjected to the remainder of the criminal process and that the writ is necessary to prevent them from having to negotiate the second preliminary hearing and possible eventual trial. This court long ago recognized that "The adequacy of a remedy is not to be tested by the convenience or inconvenience of the parties to a particular case. If such a rule were to obtain, the law of appeals might as well be abrogated at once." *Willman v. District Court*, 4 Idaho 11, 35 P. 692 (1894). There are no circumstances shown in this case to be exceptional nor is it shown that defendants will be subjected to any hardships over and above those ordinarily borne by a defendant in a criminal prosecution. *Smith v. Young, supra*. Either writ was consequently improper under the circumstances in this case.

The writ of prohibition additionally is available upon a showing that the body to be enjoined by the writ is in some manner

---

1. I.C. § 7–302 provides for the issuance of writs of mandate:

    "When and by what courts issued.—It may be issued by any court except a justice's or probate court, to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station; or to compel the admission of a party to the use and the enjoyment of a right or office to which he is entitled, and *from which he is unlawfully precluded by* such inferior tribunal, corporation, board or person.

    I.C. § 7–401 defines the writ of prohibition:
    "Definition.—The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdic-

tion of such tribunal, corporation, board or person."

2. I.C. § 7–303 provides:

    "Absence of adequate remedy.—The writ must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It must be issued upon affidavit, on the application of the party beneficially interested."

    I.C. § 7–402 provides:
    "When and how issued.—It may be issued by any court except probate or justice's courts, to an inferior tribunal, or to a corporation, board or person in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It is issued upon affidavit on the application of the person beneficially interested."

in excess of its jurisdiction. I.C. § 7–401. The magistrate clearly had jurisdiction. I.C. § 1–2208(3)(d).

Affirmed.

SHEPARD, J., concurs.

DONALDSON, J., concurs in the result.

BAKES, Justice, concurring specially.

I concur in the action of the Court in affirming the district court's denial of the applications for writs of prohibition and/or mandate. It is clear, as the decision of the Court has pointed out, that the statutory grounds for issuance of the writs did not exist and therefore the district court properly denied the writ.

BISTLINE, Justice, dissenting.

This case bears out the evaluation I made of what the Court's decision actually stands for in the companion case of *State v. Stockwell*, 98 Idaho 797, 573 P.2d 116 (1977), namely: a violation of defendant's constitutional rights to due process of law, and a radical realignment of the power structure prescribed by article 1, § 8 of the Idaho Bill of Rights, which interposed a neutral judiciary between the prosecutor-advocate and the accused. As I feared, the true lesson in *Stockwell* was that this Court, in effect, was putting Idaho magistrates on notice that it would condone whatever judicial restructuring was necessary to uphold "prosecutorial zeal that demands an obsequious judge and inevitable victory in every case." *People v. Uhlemann*, 9 Cal.3d 662, 108 Cal. Rptr. 657, 662, 511 P.2d 609, 614 (1973). In *Rufener*, that lesson is more nakedly evident.

To his credit, Justice Bakes, in authoring *Stockwell*, *did* attempt to keep that opinion within bounds. The porous logic of the opinion, however, like the faulty earthenworks at Teton Dam, has immediately given way. In *Stockwell*, the majority heard an appeal from a non-appealable district court order granting habeas corpus relief, and used the occasion to reach all the way back to the preliminary hearing in a criminal action which was dismissed and declared that the magistrate at that hearing committed error. Despite the inevitable message which such appellate practice conveys, the Court in *Stockwell* concluded:

.  .  .  our holding is a narrow one based upon the following circumstances of this case: (1) that the magistrate erred by preventing the state from reopening and introducing additional relevant evidence at the preliminary hearing; (2) that the record in this case does not suggest that the dismissal and refiling of the charge was done for harassment or delay or because the prosecutor had made no effort to present available evidence at the first preliminary hearing; and (3) the prosecutor followed steps in refiling the charge which were not prohibited by the statutes or criminal rules in felony cases."

By the time we get to *Rufener*, *Stockwell* is said to stand for the proposition that "such a refiling is not prohibited unless done without good cause or in bad faith." This is the standard which is applied in those states which have retained the ancient prosecutorial privilege of *nolle prosequi* and which have no equivalent to Idaho's constitutional and statutory protections:

"  .  .  .  the right of the prosecutor to nol-pros a case is not subject to judicial control unless exercised by the prosecutor in a scandalous or corrupt manner, or shown to be capricious and vexatiously repetitious." *District of Columbia v. Benefield*, 248 A.2d 127 (D.C.C.A.1963).

Nonetheless, Justice Bakes is silent in the face of Rufener's distortion of the views he attempted to state in *Stockwell*.[1] I can only conclude that *Rufener* is what *Stock-*

---

1. It should be noted that the "majority opinion" in *Stockwell* was signed by only two members of the Court. It should also be noted that the author of *Stockwell* has not endorsed the extension of that opinion to the facts in *Rufener*. Finally, it should be noted that while the three-man majority in *Rufener* bases its opinion upon the reasoning in *Stockwell*, two members of the *Rufener* majority concurred only in the result but not in the reasoning in *Stockwell* itself.

*well* truly stands for. Again, that message will not be lost on this state's prosecutors and magistrates.

According to the opinion of Magistrate Shaud—which the district court adopted in substance—the question before the Court in Rufener's petition for writ of prohibition concerns "whether or not the prosecuting attorney may dismiss an action and then refile charges for the same or more serious offense." The question betrays an unfortunate mind-set which is apparently prevalent among Idaho's lower judiciary and which today prevails in this Court as well. Given Idaho's constitutional and statutory framework, the question which should have been addressed is:

> Has the prosecutor presented a proper motion for dismissal, obtained a valid dismissal order, and shown sufficient reason to justify refiling the same charges which were rejected earlier by the committing magistrate?

In this case, as in *Stockwell*, the magistrate held the defendants to answer in district court on charges less than those desired by the prosecuting attorney.[2] In *Stockwell*, the prosecutor refused to file the information and sought dismissal in district court. Here, the prosecutor filed the information binding Rufener over on charges of involuntary manslaughter. The information was filed on June 9, 1975, and no motion of dismissal was brought until October 29, 1975. That motion contained no statement of the prosecutor's reasons for seeking a dismissal, aside from the bald assertion that the information charging involuntary manslaughter should

". . . be dismissed for the reason that the undersigned desires to institute a subsequent prosecution against the above-named defendant for the crime of FIRST DEGREE MURDER and SECOND DEGREE KIDNAPPING pursuant to the provisions of Rule 5.1(b 1) [5.1(b)] of the Idaho Rules of Criminal Practice and Procedure. . . . "

The district court heard the motion ex parte, and granted the motion without stating his reasons therefor, as mandated by I.C. § 19–3504. The Order of Dismissal reads:

> "The Court having heard the Motion heretofore made in the above-entitled case by Henry W. Manning, Prosecuting Attorney of Minidoka County, State of Idaho, and the Court being fully advised in the premises;
>
> "IT IS HEREBY ORDERED, that the Information in the aforementioned case be, and the same is, hereby dismissed, and that the bond heretofore posted, if any, be and the same is hereby exonerated. . . . "

Nothing more was provided to obliterate the outcome of a preliminary hearing which had consumed five days and had generated 1,093 pages of testimony in magistrate's court.

For the reasons stated in my dissent in *Stockwell*, I would hold that such a dismissal order is invalid. I would thus not reach the question of whether the prosecutor had a right to refile. If *that* question had to be reached, I would of course agree with the majority that an order of dismissal does not constitute a discharge on the merits and thus has no *res judicata* effect and does not

---

2. The magistrate's bench remarks, made a part of this record, reveal that he had fully studied the case. He understood the function of a preliminary hearing, the standard he was to apply in reaching his decision and the very limited burden placed upon the State to prove all elements of a crime sufficiently to demonstrate *probable cause to bind over*. He eliminated the possibility of first degree murder because Idaho's murder felony statute had recently and inexplicably been repealed. He eliminated the possibility of second degree murder because the State had not shown sufficient "implied malice" to warrant that designation.

And he committed the Rufeners to answer on a charge of involuntary manslaughter because, in the absence of a felony murder statute, such was the proper definition of an unlawful killing which occurs "in the perpetration of or attempt to perpetrate any unlawful act" other than those usually listed as felony murders. Magistrate [now District Court Judge] Granata's reading of the law seems unassailable and it was surely within his discretion, having sat through five days of hearings, to rule on the adequacy of the State's evidence to prove probable cause on the element of "implied malice."

create any double jeopardy problems such as would serve to bar the later refiling. I.C. § 19–3506; I.R.C. 5.1(b) and 48(b)(3). But the inquiry cannot end there. As I have shown in *Stockwell*, a prosecutor is required to state his reasons for moving to dismiss. The most usual reasons for granting a motion to dismiss and allowing the prosecutor to refile on higher charges involve either a clear error of law on the part of the committing magistrate or a dramatic change in circumstances after the commitment order is entered. The majority, by contrast, requires nothing more than a good faith "desire" by the prosecutor to toss out the magistrate's commitment order and to start from scratch in hopes of doing better the second time around. In short, every prosecutor is to get two bites (at least two) out of the apple before being made to justify his conduct in district court.

In *Stockwell*, there was no allegation that the magistrate had erred as a matter of law or had abused his discretion—though those are the sole matters properly before a district court. Still, there was at least a claim that the prosecutor might have been able to do better if the magistrate had permitted him to reopen the case and to present further evidence. That bare unsubstantiated claim gave the majority the opportunity to pour over the transcript from the preliminary hearing and to speculate as to ways in which the magistrate might have abused his discretion in ruling as he did.

Here, there is not even that much. There is only the prosecutor's "desire" to dismiss and refile. The Court in *Rufener* finds no error on the part of the committing magistrate, nor was there ever even a contention that the magistrate prejudiced the prosecutor's presentation at the preliminary hearing. There is no claim that the prosecutor, for tactical purposes, withheld some evidence and miscalculated the amount necessary to have the Rufeners bound over on the charges filed in the original complaint. Indeed, the parties have stipulated before this Court,

"That all of the evidence now available to the prosecuting attorney of Minidoka County or members of the law enforcement department of Minidoka County, to convict Ernest Rufener of the crimes of first degree murder and either first or second degree kidnapping were available at the time said preliminary hearing was conducted and all material evidence was made available to the Honorable George G. Granata, Jr. That no new evidence has become available to said prosecuting attorney of Minidoka County since the time said preliminary hearing was conducted."

I would hold, under such circumstances, that a prosecutor's motion to dismiss in order to refile on higher charges could not properly be granted. The order of dismissal was invalid for lack of due process, having been entered ex parte and without notice or opportunity in the defendant to be heard. It was an absolute violation of I.C. §§ 19–3504 and 19–3505, which together have declared the law in Idaho to be that a prosecuting attorney can not discontinue or abandon a prosecution for a public offense except to move for a dismissal in the furtherance of justice, with the mandatory requirement that the reasons for a dismissal must be set forth in an order entered upon the minutes.

It was not the defendants here, but the prosecutor who moved the court into the error of entering a void order. Nothing precludes the Rufeners from challenging that order, which they properly did in seeking to preclude their being harassed and hassled through a second set of charges and preliminaries on exactly the same charges on which they had already been processed.

To his credit, Judge Shaud, the second magistrate, recognized the issue, stipulated the background of this controversy, which involves purely propositions of law, and concluded that the Rufeners had no plain or adequate remedy in the ordinary course of law.[3]

---

**3.** The concluding paragraphs of the stipulation entered into between Judge Shaud and defendant Rufener state:

"That the parties waive a jury trial in this proceeding and request a trial by the court based upon this stipulation. That the affida-

Under the circumstances, Judge Shaud could do no more. A magistrate is in no position to review the validity of the dismissal order of a district judge. Judge Bellwood, unfortunately, merely adopted Judge Shaud's decision as his own, thereby incorporating the magistrate's seeming approval of Judge Bellwood's own earlier dismissal order. As a result, the validity of that dismissal has never been reviewed. Such a review is properly the province of the Supreme Court and, in all other jurisdictions, is routinely provided by a writ of prohibition or a comparable extraordinary writ. *See, Jones v. Superior Court of San Bernardino County,* 4 Cal.3d 660, 94 Cal. Rptr. 289, 483 P.2d 1241 (1971); *Jennings v. Superior Court of Contra Costa County,* 66 Cal.2d 867, 59 Cal.Rptr. 440, 428 P.2d 304 (1967); *Van Gundy v. O'Kane,* 142 Colo. 114, 351 P.2d 282 (1960); *Myers v. Commonwealth,* 363 Mass. 843, 298 N.E.2d 819 (1973); *Stone v. Hope,* 488 P.2d 616 (Okla. Cr.App.1971); *Thomas v. Justice Court of Washakie County,* 538 P.2d 42 (Wyo.1975).

By way of final analysis: in both *Stockwell* and in *Rufener,* for reasons amply pointed out in my dissent in *Stockwell,* the prosecuting attorneys obtained invalid orders of dismissal. The State of Idaho in *Stockwell* is without legal right to appeal the invalid dismissal obtained by its prosecutor. In *Rufener,* however, the Rufeners are not so disqualified and were entitled to go to trial on the exact charges for which they were bound over by the commitment order of Judge Granata. Any other result can only lead to sheer anarchy in the judicial system.

vit on application for writ of prohibition and/or mandamus previously filed in this proceeding be considered as a verified complaint or petition under Rule 74 of the Idaho Rules of Civil Procedure.

"That the decision of the court in the above entitled case be considered for all purposes as the findings of fact and conclusions of law as well as the judgment of the court.

"That Ernest Rufener has no plain, speedy or adequate remedy other than by application to this court for a writ of prohibition and/or mandamus."

Judge Bellwood himself accepted this stipulation of the parties that the defendant lacked

any adequate and speedy remedy in the ordinary course of law. His grant of the alternative writ of prohibition and his eventual denial of the peremptory writ were both determinations on the merits. The contention that a writ of prohibition would not lie under the circumstances of this case was not advanced below. I find it significant that the issue of whether the prosecutor's dismissal in this case amounted to an affront upon the integrity of magistrate's court was first deemed nonreviewable when the interests of the magistrate were "represented" here by the State's chief prosecutor.