788 P.2d 207

**STATE of Idaho, Plaintiff-respondent,**

v.

**Jiwana DIAZ, aka Jiwana Tail, Defendant-appellant.**

No. 17821.

Supreme Court of Idaho.

March 1, 1990.

Michael J. Wood, Twin Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Michael J. Kane (argued), Deputy Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Chief Justice.

Jiwana Diaz was arrested for possession of controlled substances with intent to deliver. She appeals from a decision of the district court which affirmed the magistrate's dismissal of a criminal complaint against Diaz, but which also reversed the magistrate's order which had held that the state could not refile a criminal case against Diaz unless 1) the state came before that particular magistrate, and 2) the state discovered new evidence, or 3) the state disclosed the identity of the confidential informant. We affirm the district court's reversal of those conditions imposed by the magistrate.

I

On February 19, 1987, Twin Falls police officer Ron Axtman, relying on a confidential informant, obtained a warrant to search the residence of Jiwana Diaz and Rolando Valles. Officer Axtman swore that the confidential informant disclosed that approximately six ounces of cocaine were observed by the informant. In a search pursuant to the warrant, substantial evidence was seized and Diaz and Valles were charged on February 20, 1987, with possession of cocaine with intent to deliver.

On March 20, 1987, Magistrate Thomas Cushman held a preliminary hearing for Diaz and Valles. At the hearing, Diaz's counsel asked Officer Axtman who the informant was. Officer Axtman refused to answer. An *in camera* hearing was then held, after which Magistrate Cushman denied the state's request for a protective order and required the state to identify the informant. Rather than disclose the identity, the state then moved to dismiss the case. Magistrate Cushman granted the state's dismissal motion, but also granted a motion made by Valles' counsel and joined by Diaz's counsel prohibiting the refiling of criminal charges unless the state was willing to disclose in his court the informant's identity. Magistrate Cushman indicated that because he did not want any forum shopping, the state would have to refile in his court.[1] The state did not object to, or appeal from, the dismissal order as conditioned.

---

1. We note initially that a magistrate does not have the authority to order that a case in which he or she dismissed must be refiled only in his or her court. *Rufener v. Shaud,* 98 Idaho 823, 825, 573 P.2d 142, 144 (1978) ("In this state judges are assigned through the administrative procedures of the Court....").

Subsequently, the state sought to prosecute Diaz by obtaining a grand jury indictment. After the first indictment was quashed because jury selection requirements were not complied with, a second indictment was quashed by the district court on the ground that the state could not collaterally attack Magistrate Cushman's conditional dismissal order but rather should have appealed directly to the district court.

On February 25, 1988, the state filed another criminal complaint against Diaz, this time for possession of marijuana with intent to deliver, a charge different from the first one, but admittedly based on evidence obtained from the same search. Preliminary hearing was held on May 2, 1988, again, before Magistrate Cushman. Defense counsel again requested the identity of the informant and the state again refused to disclose it. The state then requested a protective order arguing that the informant's identity was privileged. Magistrate Cushman denied the request because (1) the state waived the privilege in the first case by not specifically and timely asserting it, and (2) the privilege did not apply since the person was not an informant, but "an accuser." Magistrate Cushman then dismissed the case on defendant's motion and reimposed the following conditions for refiling: that the state must (1) refile in his court, and (2) disclose new evidence that was not previously available, or (3) disclose the informant's identity.

The state appealed Magistrate Cushman's last conditional order of dismissal to the district court. On September 26, 1988, District Judge Daniel B. Meehl affirmed the dismissal order but reversed all conditions placed on refiling. Judge Meehl held that Magistrate Cushman had no authority to order that his preliminary hearing rulings have *res judicata* effect after the complaint was dismissed. If the state is dissatisfied with a magistrate's ruling, it should move for dismissal, Judge Meehl wrote, citing *State v. Ruiz*, 106 Idaho 336, 678 P.2d 1109 (1984), and then "should be allowed to file the case in front of another magistrate and seek a different ruling."

Diaz has appealed the district court's order to this Court.

## II

The issue to be resolved in this case is whether a magistrate, who dismisses a criminal action at the preliminary hearing stage upon the motion of either the state or the defendant, has the authority to attach conditions to an order of dismissal which affect the refiling of the complaint. We agree with the district court's ruling that a magistrate has no authority or discretion to place conditions on refiling a criminal complaint dismissed at a preliminary hearing.

A magistrate's limited authority, in dismissing a felony complaint, was recently delineated by this Court in *State v. Ruiz*, 106 Idaho 336, 678 P.2d 1109 (1984), where the state appealed from an order of a magistrate court dismissing a criminal complaint on the basis that the state had not shown probable cause that the accused had committed the crimes charged. The state argued that it should be able to directly appeal the magistrate's dismissal to the district court. We rejected the state's position and held that where the order of a magistrate was an 'order granting a motion to dismiss a complaint,' the State may not appeal from that order...." 106 Idaho at 337, 678 P.2d at 1110. In support of this holding we wrote:

[W]e deem that our holding today will serve the interest of both the prosecution and the defense since, as we hold, it is clear that the prosecution can immediately thereafter initiate a new complaint before a different magistrate and insure the public's right to the speedy administration of justice. An accused, at the same time, can and will obtain a speedy determination of his rights and position without the inconvenience, delay and expense of a lengthy appellate process.

Here, the State could have simply filed another complaint with another magistrate, in effect having its assertion of error resolved in a new preliminary hearing. *See Stockwell v. State*, 98 Idaho 797, 573 P.2d 116 (1977); and *Rufener v.*

*Shaud,* 98 Idaho 823, 573 P.2d 142 (1977); I.C. § 19–3506....

106 Idaho at 337, 678 P.2d at 1110.

Under *Ruiz,* the state's *only* remedy from a dismissal by a magistrate is to refile "another complaint with another magistrate." *Id.* at 337, 678 P.2d at 1110. The magistrate's order in this case impairs the very remedy which this Court in *Ruiz* held to be the state's sole recourse.[2]

The district court evaluated this case based on *Ruiz,* and stated:

> Admittedly, the dismissal in this case may have been a sanction for the state's failure to name the confidential informant, not simply for lack of probable cause, as was the case in *Ruiz, supra.* This distinction is, however, not meaningful in light of the reasoning behind *Ruiz.* The same logic in *Ruiz* is equally applicable to cases where the state objects to the magistrate's evidentiary rulings or orders to disclose confidential informants. The Supreme Court does not want these cases clogging the appellate calendar. In these types of cases the state should be allowed to file the case in front of another magistrate and seek a different ruling.

We affirm the district court's order.[3] *State v. Ruiz,* 106 Idaho 336, 678 P.2d 1109 (1984).

JOHNSON, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, dissenting.

I disagree with the majority's implicit determination that stripping magistrates of their inherent powers will somehow

streamline judicial administration and the administration of justice.[4] The Court improperly interprets the State's power under I.C. § 19–3506 (to refile after dismissal) as an absolute right. According to the majority, this right is so absolute that it even defeats all efforts by magistrates to prevent the State from hiding evidence. Judge Cushman, confronted with a prosecution unwilling to divulge in camera the identity of a confidential informant, responded as most judges should: He dismissed the complaint against the defendant. He realized, however, that the State might still prevail at hiding the truth (hiding some of the evidence) by refiling before another magistrate. To prevent the State from so denigrating the criminal justice system, Judge Cushman allowed the State to refile, but *in his court,* provided that the State had acquired new evidence, or was willing to divulge the informant's identity. Where Judge Cushman was wholly familiar with the case, his restrictions on refiling would have led to the exact results that Chief Justice Bakes sees as desirable—the swift administration of justice without unnecessary delays or duplicative efforts.

Footnote 1 of the majority opinion is a strong indication that the majority incorrectly phrases the issue presented to us. The majority quotes *Rufener* for the proposition that judges are assigned through administrative procedures. Here, no one has questioned the assignment of Judge Cushman to this case. The issue, an extremely important one, is whether magistrates ought to be deprived of the power they

---

2. On appeal, the state also argues that Magistrate Cushman's conditions on the dismissal order also amounted to an unauthorized *de facto* writ of prohibition. Under I.C. § 1–2210, this Court may grant additional jurisdiction to magistrates to issue writs of prohibition. Under I.R.C.P. 82(c)(2), any such additional authority is granted by the Administrative District Judge. Fifth judicial district magistrates have not been granted authority to issue writs of prohibition. Idaho State Bar Desk Book, pp. C–40 to C–41 (1988).

3. Because we affirm the dismissal, there are no criminal charges currently pending against Diaz in this case. Accordingly, we do not address the issue raised by Diaz of whether a future refiled criminal complaint involving the same charge

as filed previously would be a violation of Diaz's speedy trial rights.

4. That magistrates ought to have some inherent powers is supported by the criminal rules. Justice Shepard, the author of the *Ruiz* opinion, which only Justice Bakes did not join, reminded all judges in the system that "I.C.R. 2(a) requires the subsequent criminal rules to be construed in accordance therewith:

> 'Purpose and construction. These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, *fairness in administration and elimination of unjustifiable expense and delay.*' "

*State v. Ruiz,* 106 Idaho at 337, 678 P.2d at 1110 (emphasis added).

need in order to prevent prosecutorial abuses. The mischaracterization of the issue is compounded later in the court's opinion where the majority speaks of the remedies available to the State for the setbacks suffered at the hands of competent magistrates. In the majority's words, "[t]he magistrate's order in this case impairs the very remedy [i.e., refiling before a different magistrate] which this Court in *Ruiz* held to be the state's sole recourse." 117 Idaho at 393, 788 P.2d at 208 (footnote omitted). The State, properly speaking, should not have the recourse or remedy of judge shopping when a magistrate is forced, by the State's own intransigence, to dismiss a complaint against a defendant.

The facts here involved, i.e., the prosecution's refusal to divulge the informant's identity, are not at all similar to those in *Rufener,* and bear no great resemblance to *Ruiz.* The majority's interpretation of *Ruiz* should be rejected. *Ruiz,* like its predecessor *Rufener,* stands for the proposition that "the only limit to refiling a complaint is that it cannot be done without good cause or in bad faith." *Ruiz,* 106 Idaho at 338, 678 P.2d at 1111. Here, the conditions imposed on the State's refiling by Judge Cushman were designed to prevent the State from refiling without good cause or in bad faith. Besides, there is an alternative to refiling where the prosecution thinks it has been mistreated. Found in the case law precedent cited by Justice Shepard in authoring the *Ruiz* opinion is *State v. Maki,* 192 N.W.2d 811 (Minn.1971). Justice Shepard was impressed enough with the Minnesota court's views that he quoted *almost* the entire *ratio decidendi* by which the Minnesota court concluded there should be no right of appeal from a magistrate's dismissal of charges. *Ruiz,* 106 Idaho at 338, 678 P.2d at 680. The conclusion of *Maki* which Justice Shepard quoted made clear the philosophy of the Minnesota court's ruling: "An appellate court should not be required to review the

issue of probable cause in every preliminary examination before the magistrates of this state." 192 N.W.2d at 812, quoted with approval in *Ruiz,* 106 Idaho at 338, 678 P.2d at 680. Justice Shepard apparently saw no reason to include the Minnesota court's language which went beyond presenting the matter to another magistrate. As that court explained, "[t]he prosecutive authorities may, by further appropriate proceedings, pursue the matter, *either* by presenting it to another magistrate *or* by presenting facts relating to the alleged offense to a grand jury for indictment." 192 N.W.2d at 812 (emphasis added). In Idaho, no preliminary hearing is permitted if the prosecutor resorts to a grand jury indictment for a felony charge. *See* Idaho Criminal Rule 5.1. See *State v. Edmonson,* 113 Idaho 230, 241–59, 743 P.2d 459, 470–88 (1987), for criticism of this portion of the rule.

The facts of this case are not in dispute. A confidential informant *purportedly* told the police that drugs were stashed. at Diaz's residence. A search warrant was issued and executed. When the State refused at the preliminary hearing to divulge the name of the informant, the magistrate dismissed the case. There is no reason, other than those reasons based on no good cause or in bad faith, for the State to refuse to divulge in an in camera proceeding the name of the confidential informant. The majority has failed to examine the facts of this case, and has opted instead to hang onto an inflexible interpretation of the State's "right" to refile whenever it chances to lose. Here, the State made an election, and the magistrate did what was necessary to prevent judge shopping. Chief Justice Bakes, the author of today's opinion, once wrote, "[t]oday's opinion will no doubt be viewed by some as encouraging 'judge shopping.' " *Ruiz,* 106 Idaho at 339, 678 P.2d at 1112 (Bakes, J., dissenting). Justice Bakes by the *Rufener* and *Stockwell* opinions [5] paved the way for

---

5. Companion cases: *State v. Stockwell,* 98 Idaho 797, 573 P.2d 116 (1977), and *Rufener v. Shaud,* 98 Idaho 823, 573 P.2d 142 (1977). The *Rufener* majority opinion, written by Judge Dunlap, simply followed the holding of *Stockwell,* which

Justice Bakes authored. Of interest, District Judge McDermott was defense counsel in *Stockwell;* District Judge May was defense counsel in *Rufener.* It was their clients who were done the disservice by criminal justice administration in

judge shopping. Obviously such was over-looked at the time of *Ruiz*.

## APPENDIX A

This case bears out the evaluation I made of what the Court's decision actually stands for in the companion case of *State v. Stockwell*, 98 Idaho 797, 573 P.2d 116 (1977), namely: a violation of defendant's constitutional rights to due process of law, and a radical realignment of the power structure prescribed by article 1, § 8 of the Idaho Bill of Rights, which interposed a neutral judiciary between the prosecutor-advocate and the accused. As I feared, the true lesson in *Stockwell* was that this Court, in effect, was putting Idaho magistrates on notice that it would condone whatever judicial restructuring was necessary to uphold 'prosecutorial zeal that demands an obsequious judge and inevitable victory in every case.' *People v. Uhlemann*, 9 Cal.3d 662, 108 Cal.Rptr. 657, 662, 511 P.2d 609, 614 (1973). In *Rufener*, that lesson is more nakedly evident.

To his credit, Justice Bakes, in authoring *Stockwell*, did attempt to keep that opinion within bounds. The porous logic of the opinion, however, like the faulty earthenworks at Teton Dam, has immediately given way. In *Stockwell*, the majority heard an appeal from a non-appealable district court order granting habeas corpus relief, and used the occasion to reach all the way back to the preliminary hearing in a criminal action which was dismissed and declared that the magistrate at that hearing committed error. Despite the inevitable message which such appellate practice conveys, the Court in *Stockwell* concluded:

'... our holding is a narrow one based upon the following circumstances of this case: (1) that the magistrate erred by preventing the state from reopening and introducing additional relevant evidence at the preliminary hearing; (2) that the record in this case does not suggest that the dismissal and refiling of the charge was done for harassment or delay or

the companion cases. There is much to be learned from the evaluation by the one dissenting justice who in *Rufener* assessed what was

because the prosecutor had made no effort to present available evidence at the first preliminary hearing; and (3) the prosecutor followed steps in refiling the charge which were not prohibited by the statutes or criminal rules in felony cases.'

By the time we get to *Rufener*, *Stockwell* is said to stand for the proposition that 'such a refiling is not prohibited unless done without good cause or in bad faith.' This is the standard which is applied in those states which have retained the ancient prosecutorial privilege of *nolle prosequi* and which have no equivalent to Idaho's constitutional and statutory protections:

'... the right of the prosecutor to nol pros a case is not subject to judicial control unless exercised by the prosecutor in a scandalous or corrupt manner, or shown to be capricious and vexatiously repetitious.' *District of Columbia v. Benefield*, 248 A.2d 127 (D.C.C.A.1963).

Nonetheless, Justice Bakes is silent in the face of *Rufener*'s distortion of the views he attempted to state in *Stockwell*. I can only conclude that *Rufener* is what *Stockwell* truly stands for. Again, that message will not be lost on this state's prosecutors and magistrates.

According to the opinion of Magistrate Shaud—which the district court adopted in substance—the question before the Court in *Rufener*'s petition for writ of prohibition concerns 'whether or not the prosecuting attorney may dismiss an action and then refile charges for the same or more serious offense.' The question betrays an unfortunate mind-set which is apparently prevalent among Idaho's lower judiciary and which today prevails in this Court as well. Given Idaho's constitutional and statutory framework, the question which should have been addressed is:

Has the prosecutor presented a proper motion for dismissal, obtained a valid dismissal order, and shown sufficient reason to justify refiling the same

taking place. The appropriate part of that opinion is attached hereto as Appendix A.

charges which were rejected earlier by the committing magistrate?

In this case, as in *Stockwell*, the magistrate held the defendants to answer in district court on charges less than those desired by the prosecuting attorney. In *Stockwell*, the prosecutor refused to file the information and sought dismissal in district court. Here, the prosecutor filed the information binding Rufener over on charges of involuntary manslaughter. The information was filed on June 9, 1975, and no motion of dismissal was brought until October 29, 1975. That motion contained no statement of the prosecutor's reasons for seeking a dismissal, aside from the bald assertion that the information charging involuntary manslaughter should

> ... be dismissed for the reason that the undersigned desires to institute a subsequent prosecution against the above-named defendant for the crime of FIRST DEGREE MURDER and SECOND DEGREE KIDNAPPING pursuant to the provisions of Rule 5.1(b1) [5.1(b)] of the Idaho Rules of Criminal Practice and Procedure....'

The district court heard the motion ex parte, and granted the motion without stating his reasons therefor, as mandated by I.C. § 19–3502. The Order of Dismissal reads:

> 'The Court having heard the Motion heretofore made in the above-entitled case by Henry W. Manning, Prosecuting Attorney of Minidoka County, State of Idaho, and the Court being fully advised in the premises;
>
> IT IS HEREBY ORDERED, that the Information in the aforementioned case be, and the same is, hereby dismissed, and that the bond heretofore posted, if any, be and the same is hereby exonerated....'

Nothing more was provided to obliterate the outcome of a preliminary hearing which had consumed five days and had generated 1,093 pages of testimony in magistrate's court.

For the reasons stated in my dissent in *Stockwell*, I would hold that such a dismissal order is invalid. I would thus not reach the question of whether the prosecutor had a right to refile. If *that* question had to be reached, I would of course agree with the majority that an order of dismissal does not constitute a discharge on the merits and thus has no *res judicata* effect and does not create any double jeopardy problems such as would serve to bar the later refiling. I.C. § 19–3506; I.R.C. 5.1(b) and 48(b)(3). But the inquiry cannot end there. As I have shown in *Stockwell*, a prosecutor is required to state his reasons for moving to dismiss. The most unusual reasons for granting a motion to dismiss and allowing the prosecutor to refile on higher charges involve either a clear error of law on the part of the committing magistrate or a dramatic change in circumstances after the commitment order is entered. The majority, by contrast, requires nothing more than a good faith 'desire' by the prosecutor to toss out the magistrate's commitment order and to start from scratch in hopes of doing better the second time around. In short, every prosecutor is to get two bites (at least two) out of the apple before being made to justify his conduct in district court.

In *Stockwell*, there was no allegation that the magistrate had erred as a matter of law or had abused his discretion—though those are the sole matters properly before a district court. Still, there was at least a claim that the prosecutor might have been able to do better if the magistrate had permitted him to reopen the case and to present further evidence. That bare unsubstantiated claim gave the majority the opportunity to pour over the transcript from the preliminary hearing and to speculate as to ways in which the magistrate might have abused his discretion in ruling as he did.

Here, there is not even that much. There is only the prosecutor's 'desire' to dismiss and refile. The court in *Rufener* finds no error on the part of the committing magistrate, nor was there ever even a contention that the magistrate prejudiced the prosecutor's presentation at the preliminary hearing. There is no claim that the prosecutor, for tactical purposes, withheld some evidence and miscalculated the

amount necessary to have the Rufeners bound over on the charges filed in the original complaint. Indeed, the parties have stipulated before this Court,

'That all of the evidence now available to the prosecuting attorney of Minidoka County or members of the law enforcement department of Minidoka County, to convict Ernest Rufener of the crimes of first degree murder and either first or second degree kidnapping were available at the time said preliminary hearing was conducted and all material evidence was made available to the Honorable George G. Granata, Jr. That no new evidence has become available to said prosecuting attorney of Minidoka County since the time said preliminary hearing was conducted.'

I would hold, under such circumstances, that a prosecutor's motion to dismiss in order to refile on higher charges could not properly be granted. The order of dismissal was invalid for lack of due process, having been entered ex parte and without notice or opportunity in the defendant to be heard. It was an absolute violation of I.C. § 19–3502 and 19–3505, which together have declared the law in Idaho to be that a prosecuting attorney can not discontinue or abandon a prosecution for a public offense except to move for a dismissal in the furtherance of justice, with the mandatory requirement that the reasons for a dismissal must be set forth in an order entered upon the minutes.

It was not the defendants here, but the prosecutor who moved the court into the error of entering a void order. Nothing precludes the Rufeners from challenging that order, which they properly did in seeking to preclude their being harassed and hassled through a second set of charges and preliminaries on exactly the same charges on which they had already been processed.

To his credit, Judge Shaud, the second magistrate, recognized the issue, stipulated the background of this controversy, which involves purely propositions of law, and concluded that the Rufeners had no plain or adequate remedy in the ordinary course of law.

Under the circumstances, Judge Shaud could do no more. A magistrate is in no position to review the validity of the dismissal order of a district judge. Judge Bellwood, unfortunately, merely adopted Judge Shaud's decision as his own, thereby incorporating the magistrate's seeming approval of Judge Bellwood's own earlier dismissal order. As a result, the validity of that dismissal has never been reviewed. Such a review is properly the province of the Supreme Court and, in all other jurisdictions, is routinely provided by a writ of prohibition or a comparable extraordinary writ. *See, Jones v. Superior Court of San Bernardino County,* 4 Cal.3d 660, 94 Cal.Rptr. 289, 483 P.2d 1241 (1971); *Jennings v. Superior Court of Contra Costa County,* 66 Cal.2d 867, 59 Cal.Rptr. 440, 428 P.2d 304 (1967); *Van Gundy v. O'Kane,* 142 Colo. 114, 351 P.2d 282 (1960); *Myers v. Commonwealth,* 363 Mass. 843, 298 N.E.2d 819 (1973); *Stone v. Hope,* 488 P.2d 616 (Okla. Cr.App.1971); *Thomas v. Justice Court of Washakie County,* 538 P.2d 42 (Wyo.1975).

By way of final analysis: in both *Stockwell* and in *Rufener,* for reasons amply pointed out in my dissent in *Stockwell,* the prosecuting attorneys obtained invalid orders of dismissal. The State of Idaho in *Stockwell* is without legal right to appeal the invalid dismissal obtained by its prosecutor. In *Rufener,* however the Rufeners are not so disqualified and were entitled to go to trial on the exact charges for which they were bound over by the commitment order of Judge Granata. Any other result can only lead to sheer anarchy in the judicial system.

*Rufener v. Shaud,* 98 Idaho 823, 826–29, 573 P.2d 142, 145–48 (1977) (footnotes omitted) (Bistline, J. dissenting).